IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **02-cv-01004**

**VIRTUAL CLOUD SERVICES, INC.**,

        Plaintiff,

v.

**CH2M HILL, INC., a Florida corporation, and TIMOTHY INGRAM**,

        Defendants.

_____

**ORDER**
_____

KANE, J.

      This is a business tort action in which Plaintiff Virtual Cloud is suing its former development officer Jeffrey Ingram and former joint venturer CH2M Hill claiming Ingram defected to CH2M Hill after an "alliance" agreement between the companies faltered. Virtual Cloud claims Ingram misappropriated certain computer network monitoring software he had developed while at Virtual Cloud, which Virtual Cloud believed it was jointly promoting with CH2M Hill. After Ingram switched allegiances and transferred his software and know-how to CH2M Hill, Virtual Cloud claims CH2M Hill abandoned the joint venture, reaping the benefits of the technology and robbing Virtual Cloud of any beneficial interest it had in it and was entitled to retain under the parties' partnership arrangement.

      In its Complaint, Virtual Cloud originally asserted thirteen claims for relief against

CH2M Hill and Ingram ranging from violations of the federal Computer Fraud and Abuse Act to misappropriation of trade secrets and similar business torts to breach of contract, breach of fiduciary duty, and unjust enrichment.[1]  The claims are based on Virtual Cloud's assertion that CH2M Hill strung it along in sham partnership negotiations until it could hire Ingram and pirate Virtual Cloud's software for itself.  CH2M Hill denies any wrongdoing and claims Virtual Cloud gave the software to it in exchange for financial support during the relevant time period.

On Virtual Cloud's motion accompanying the Complaint, I entered a temporary restraining order limiting Defendants' use of the allegedly stolen network monitoring technology and set the matter for an expedited hearing on a request for a preliminary injunction.  After a three-day evidentiary hearing, I declined to continue the injunction, finding the legal issues too fact intensive to warrant prohibiting CH2M Hill from using information Virtual Cloud only averred was proprietary and misappropriated.

Discovery continued, and a spate of Motions for Judgment and Summary Judgment were filed seeking to tailor Plaintiff's claims.  Among them, the Motions sought judgment on eight of Plaintiff's twelve remaining claims on grounds that six of

---

[1] Specifically, Virtual Cloud asserted claims for (1) violation of the Computer Fraud Act, 18 U.S.C. § 1030(a)(2); (2) misappropriation of trade secrets under Colo. Rev. Stat. § 7-74-101 *et seq.*; (3) violations of the Colorado Consumer Protection Act (CCPA), Colo. Rev. Stat. 6-1-113; (4) unfair competition; (5) civil conspiracy; (6) conversion; (7) civil theft; (8) intentional interference with prospective business advantage; (9) breach of contract (against Ingram); (10) breach of contract (against CH2M Hill); (11) unjust enrichment/restitution; (12) breach of fiduciary duty (against CH2M Hill); and (13) breach of fiduciary duty (against Ingram).  The CCPA claim has since been conceded as a result of intervening case law, and that claim is deemed withdrawn.

them are preempted by the Colorado Uniform Trade Secrets Act and three others – the CCPA claim and the claims for intentional interference and breach of contract against Ingram – fail under Rule 56(c) standards to state viable causes of action. Virtual Cloud's claims for violations of the Federal Computer Fraud and Abuse Act and Colorado Trade Secrets Act, together with its common law claims for breach of contract against CH2M Hill and breach of fiduciary duty against Ingram are not the subject of any dispositive motion at this time. Virtual Cloud has since confessed judgment on the CCPA claim.

Considering carefully the parties' multiple briefs, attachments thereto and relevant statutory and other legal authority, I issue the following rulings:

**1.** ***Defendants' Motion for Judgment as a Matter of Law on Claims Preempted by the Uniform Trade Secrets Act*** (Doc. # 75, filed 8/18/03).

In this Motion, CH2M Hill and Ingram contend the express preemption provisions of the Uniform Trade Secrets Act (UTSA) bar six of Virtual Cloud's state-law tort and restitutionary claims because all are based on the same allegations of misappropriation, use, or disclosure of alleged trade secrets that give rise to Virtual Cloud's second claim for relief under Colorado's version of the UTSA.[2] Specifically, Defendants challenge

---

[2] Colo.Rev.Stat. § 7-74-108 states:

(1) Except as provided in subsection (2) of this section, this article displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.
(2) This article does not affect:
(a) Contractual remedies, whether or not based upon misappropriation of a trade secret;
(b) Other civil remedies that are not based upon a misappropriation of a trade

Claim IV of Plaintiff's Amended Complaint (unfair competition); Claim V (civil conspiracy); Claim VI (conversion); Claim VII (civil theft); Claim XI (unjust enrichment/restitution); and Claim XII (the breach of fiduciary duty against CH2M Hill). I evaluate this assertion under a Rule 12(c) standard because the claims' evidentiary sufficiency under a Rule 56(c) standard is not at issue in the Motion.

Virtual Cloud denies its common law claims are preempted, both because they form alternate theories of relief in the event Defendants succeed in their assertion that the information at issue does not meet the definition of a trade secret and because they state claims independently of whether a trade secret exists or not. Both sides rely on Judge Babcock's analysis of the issue in *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1475 (D. Colo. 1996). I grant the Motion in part and deny it in part.

In *Powell*, now Chief Judge Babcock rejected the concept of field preemption under Colorado's UTSA. Citing commentator Roger M. Milgrim, Judge Babcock disagreed with "courts that had applied blanket preemption to all claims that arise from a set of circumstances that happen to involve information that the plaintiff claims is in the nature of a trade secret," opting instead for a tailored approach where only claims "'restat[ing] the same operative facts [as] would plainly and exclusively spell out *only* trade secret misappropriation'" are preempted. *Powell*, 948 F. Supp. at 1474 (quoting *Milgrim on Trade Secrets* § 1.01[4] at 1-68.14 (1996)(emphasis added)).

---

secret . . .

4

> 'The preemption provisions can be somewhat worrisome if they are applied mechanistically or overly conceptually. Our common law is richly flexible in redressing wrongs for improper conduct which in full or in part involves the use of information derived from the plaintiff.' [Citation omitted.] It is neither necessary nor prudent to preclude all common law claims that are connected with the misappropriation of what a plaintiff claims are trade secrets.

*Id.* (quoting *Milgrim*, *supra*). Accordingly, the salient question in addressing the question of trade secrets act preemption is whether a challenged common law claim depends solely on a finding of trade secret status to be actionable. Where it does not, the claim is not preempted.

Thus, in *Powell*, Judge Babcock parsed the various common law claims of a manufacturer asserted against a former employee and that employee's new company to conclude, for example, that while the UTSA preempted the manufacturer's conversion claim, it did so only to the extent the claim was based on the conversion or theft of the manufacturer's idea or "trade secrets." 948 F. Supp. at 1475. That portion of the conversion claim seeking recovery for stolen physical items such as blueprints and drawings would not be preempted because it would not be the subject of a misappropriation claim under the UTSA. *Id.* By contrast, and because the claim could only be stated for the misappropriation or exploitation of ideas protectible as "trade secrets," plaintiff's unfair competition claim would be actionable only under the UTSA and not as a separate common law cause of action. *Id.* at 1476.

*Powell* is instructive and cannot be read, as Defendants suggest here, to require a form of field preemption for all of Virtual Cloud's claims premised on the assertion that

Defendants stole ideas that Virtual Cloud believes were trade secrets. Evaluating each of the six challenged claims under the standards articulated in *Powell*, only the claims for unfair competition, conversion and theft are worthy of further scrutiny under the doctrine of preemption.[3]

## Unfair Competition.

Virtual Cloud contends CH2M Hill and Ingram misappropriated and exploited Virtual Cloud's "proprietary information" without "license, authorization or permission." Amended Compl. ¶¶ 79-80. The question for purposes of preemption is whether the "proprietary information" allegedly purloined by CH2M Hill and Ingram was protectible only by virtue of being a "trade secret," in which case, the claim is subject to preemption under *Powell*. *See Powell*, 948 F. Supp. at 1476 (because the common law of unfair competition would not be expanded to recognize a property interest of plaintiff in the

---

[3] None of Virtual Cloud's claims for unjust enrichment, breach of fiduciary duty and civil conspiracy requires proof of exploitation or misappropriation of a trade secret to be actionable under the facts alleged. The assertion that CH2M Hill, for example, breached fiduciary duties owed to Virtual Cloud as an averred partner or joint venturer by secretly communicating and conspiring with Virtual Cloud's employee, Ingram, and otherwise acting contrary to Virtual Cloud's interest in the joint venture, if true, would be actionable independently of any claim that CH2M Hill misappropriated Virtual Cloud's purported trade secrets. The claim that CH2M Hill should disgorge or provide restitution for gains it received as a result of its collusion, conspiracy or fraud with Ingram sounds in equity and is premised on wrongdoing over and above the misappropriation of trade secrets. Finally, the alleged conspiracy between Ingram and CH2M Hill to misappropriate Virtual Cloud's value or its trade secrets through computer fraud, etc., is separate from and in addition to the claim for misappropriation of such secrets under the UTSA, and cannot reasonably be said to be preempted. Accordingly, and while the sufficiency of the evidence to support these claims under a Rule 56(c) standard remains to be seen, it cannot be said that Virtual Cloud's claims for unjust enrichment, breach of fiduciary duty and civil conspiracy are preempted by the Colorado UTSA.

design of its machine in the absence of proof that the design was a "trade secret," the

UTSA provided the only vehicle for redress and the preemption issue was moot).  In

answering this question in the negative, Virtual Cloud urges a broader view of the law of

unfair competition in Colorado than that given by Judge Babcock in *Powell*.

In *Powell*, Judge Babcock took a narrow view of the tort of unfair competition in

Colorado, concluding Colorado courts would refuse to recognize it where it sought relief

for the use or exploitation of ideas that were otherwise protectible under the law.  Where

an entity could protect its right via copyright laws, for example, an unfair competition

claim could not sound or it would be preempted by federal copyright laws.  948 F. Supp.

at 1476 (citing *American Television and Communication Corp. v. Manning*, 651 P.2d 440

(Colo. App. 1982)).  By contrast, where an entity's trade show set up was not otherwise

protectible under the law but nevertheless constituted a proprietary and valuable business

asset, *see Heller v. Lexton-Ancira Real Estate Fund, Ltd.* 809 P.2d 1016, 1021 (Colo.

App. 1990), a claim for unfair competition could be stated and, it follows, would not be

preempted by the UTSA.

Virtual Cloud rejects this reasoning, and urges me to recognize a broader tort and a

standard that precludes preemption of that tort under the UTSA whenever the source of

the duty violated is different from the duty not to misappropriate trade secrets.  Pl.'s

Resp. to Mot. Summ. J. at 12 (citing *Airport Sys. Int'l, Inc. v. Airsys ATM, Inc.*, 144 F.

Supp.2d 1268, 1270 (D. Kan. 2001)(applying Restatement Third of Unfair Competition

under Kansas law)).  Specifically, Virtual Cloud asserts its claim is "based, in part, on the

fact that Defendants owed Virtual Cloud a duty not to use the Virtual Cloud networking monitoring solution for the purpose of competing with Virtual Cloud and breached duty by competing with Virtual Cloud." Pl.'s Resp. to Mot. Summ. J. Preemption at 11-12. Virtual Cloud's distinction is unavailing.

In *Airport Systems*, the district court applied the Restatement (Third) of Unfair Competition to conclude Kansas courts would include conduct beyond the intellectual property arena within the ambit of the tort. Whether Colorado courts do or should also recognize a broader scope of the tort is of no significance in this case unless Virtual Cloud actually alleges Defendants misappropriated something other than Virtual Cloud's otherwise protectible intellectual property. Moreover, the holding in *Powell* does not turn on the proper scope of the tort of unfair competition, but on the nature of the particular anticompetitive act alleged. Where that wrong is the misappropriation of property that would be protectible only by virtue of being a trade secret, no cause of action for unfair competition will lie. Thus, even if *Airport Systems* were to set forth the law of unfair competition recognized in Colorado, it would compel no contrary conclusion in this case.

Virtual Cloud contends Defendants engaged in unfair competition by violating unspecified duties not to use the monitoring technology at issue to compete with Virtual Cloud. To the extent Defendants actions breached duties of loyalty or good faith owed Virtual Cloud as a joint venturer, Virtual Cloud may assert a claim for breach of fiduciary duty without fear that the claim is preempted by the UTSA. Independently of such a claim, however, Defendants' actions in using the technology to compete with Virtual

Cloud are wrongful only if Virtual Cloud "owned" or had a protectible property or proprietary interest in that technology.  The unlicensed use of unpatented or uncopyrighted technology that is not otherwise a protectible trade secret not the "property" of another or otherwise freely in the marketplace is not unlawful.  Under the facts alleged by Virtual Cloud, the only way in which it has a protected property or proprietary interest in the network monitoring solution is if that solution qualifies as a protectible trade secret.  *Powell* instructs that no claim for unfair competition can lie under  such circumstances.

Accordingly, Virtual Cloud's claim for unfair competition claim can only be stated as a claim for violation of the UTSA.

### Conversion.

Virtual Cloud attempts to protect the conversion claim from preemption under *Powell* by characterizing it as a claim based on the taking of the "computer program code itself – not the ideas behind it,"which Virtual Cloud implicitly concedes would be preempted by the UTSA.  Resp. at 20.  The correct analogy, according to Virtual Cloud, is to "ordinary software piracy and a fact pattern where software is illegally downloaded."  While Virtual Cloud can locate no opinions in which a Colorado court has determined that computer software is tangible property that may be the subject of a conversion claim, it urges me to do so on the basis that software has been treated as tangible property in other contexts, notably taxation.  *Id.* (citing Linda A. Sharp, Annotation, Computer Software or Printout Transactions As Subject to State Sales of Use

9

Tax, 36 A.L.R. 5th 133 (1996) at § 4). Whether the common law provides a cause of action for the conversion of the value of computer software different from its value as intellectual property is an issue I leave to other and greater minds than mine. For the purposes of this case, where there is no allegation that the vcMonitor Software has value independently of or in addition to its value as intellectual property, the claim cannot stand independently of the UTSA. Again, there is no remedy for the loss of something to which one has no ownership rights. The ownership rights in this case exist only if the software constitutes the protectible intellectual property of Virtual Cloud. Because Defendants' liability for converting that property to their own use turns on its status as being the protectible intellectual property or "trade secret" of Virtual Cloud, the claim is preempted by Virtual Cloud's claim under the UTSA.

### **Theft.**

Virtual Cloud's claim for theft fails for the same reasons as its claim for conversion. The fact Colorado's theft statute allows for greater damages than the UTSA claim does not alter the analysis. Liability depends on the existence of a valid property interest in the software by Virtual Cloud. Because that interest can only be established by proving the software was a trade secret, a cause of action for theft of the software is preempted by the UTSA.

**2. *Defendants' Motion for Summary Judgment on Virtual Cloud's Claim for Intentional Interference with Prospective Business Advantage*** (Doc. #81, filed 8/18/03).

CH2M Hill and Ingram next challenge Virtual Cloud's claims that they

intentionally interfered with Virtual Cloud's actual or prospective business relationships. I review this Motion as well as the remaining Motions under the standards set forth in Fed. R. Civ. P. 56(c).[4]

As for Virtual Cloud's claim that Defendants intentionally interfered with Virtual Cloud's prospective business relationship with FEMA, the question is whether Virtual Cloud has come forward with sufficient evidence to establish "a reasonable likelihood or probability that a contract would have resulted" with an identifiable third party but for Defendants' alleged intentional interference. *See Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995). In discovery, the third parties specifically identified by Virtual Cloud as potential prospective relationships were FEMA and the State of Colorado. Defendants deny Virtual Cloud had any relationship, potential or actual, with the State of Colorado and deny Virtual Cloud's evidence is sufficient under a summary judgment standard to establish Defendants interfered with anything more than a "mere hope" of doing business with FEMA. Defendants concede Virtual Cloud had an actual contractual relationship with Time-Warner, but deny Virtual Cloud has any evidence tying the demise of that

---

[4] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, I view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). A genuine issue of material fact exists if a rational juror could decide the disputed allegations in the non-movant's favor based on the evidence presented and the disputed fact might affect the outcome of the suit under the governing law. *See Schwarz v. Bhd. of Maint. of Way Employees*, 264 F.3d 1181, 1183 (10th Cir. 2001).

relationship with any activities of Defendants.

Virtual Cloud contends the evidence marshaled at the time Defendants filed their Motion was already more than sufficient to meet the *Klein* standard. Recently, Virtual Cloud has moved to reopen discovery to take depositions of newly disclosed persons, which motion, if granted, Virtual Cloud contends may yield additional information in support of this and other claims.[5] Even without the additional information, however, Virtual Cloud has adduced sufficient evidence regarding its negotiations and presentation to FEMA to withstand Defendants' Motion for Summary Judgment on an interference claim premised on the ground that no relationship beyond one that is a "mere hope" can be established.[6] While it is disputed whether Virtual Cloud ever pled an intentional interference claim with respect to its actual contract with Time Warner, I conclude there is sufficient evidence, under a liberal Rule 56(c) standard, to support a claim that Defendants intentionally interfered with that contract. Virtual Cloud appears to concede the claim with respect to any potential contract or relationship with the State of Colorado.

The timing and circumstances surrounding the FEMA presentation and CH2M Hill's payment of Virtual Cloud's licenses to keep Virtual Cloud in business as well as

---

[5] This Motion, filed January 26, 2006, is pending before Magistrate Judge Boland and is set for hearing on February 23, 2006.

[6] Whether the claim could withstand a Rule 56(c) motion premised on the requirements that interference be both "intentional" and "improper" to prevail on a claim based on the Restatement (2d) Torts § 766B is not before me in this motion.

witness testimony and evidence regarding emails and communications between Ingram, CH2M Hill and FEMA allow for an inference, at least, that the FEMA opportunity was more than a "mere hope" and actually viable enough for CH2M Hill to try and capture for itself independently of Virtual Cloud.

**3.** ***Ingram's Motion for Summary Judgment on Virtual Cloud's Claim for Breach of Contract*** (Doc. # 79, filed 8/18/03).

Ingram moves for summary judgment on Virtual Cloud's claim that he breached the July 10, 2000 "Employee's Invention, Non-Competition, Trade Secret and Non-Disclosure Agreement" (the "Agreement"). Ingram argues the Agreement, entered into seven months after Ingram began with Virtual Cloud as an at-will employee, was not supported by any consideration other than, arguably, continued employment which is per se inadequate to support a binding noncompete obligation. Alternatively, Ingram contends the noncompete provisions are unenforceable because they were unreasonable in duration, not sufficiently tailored to protect Virtual Cloud's alleged trade secrets, and, in any event, were waived.

I decline, at this stage of the proceedings, to conclude the Agreement was invalid for lack of consideration. I also decline to conclude the noncompete provisions are invalid or have been waived. The factual disputes in this case are substantial and complex. With regard to the averred lack of consideration of the July 2000 Agreement, Virtual Cloud contends the July 2000 Agreement was actually the third iteration of Ingram's original oral employment contract which always included as conditions of his

employment the confidentiality and noncompete obligations at issue. The question of whether the noncompete provisions of the Agreement were waived by Virtual Cloud during the course of the parties' dealings is hotly contested and cannot be resolved under a summary judgment standard. In addition, Virtual Cloud's contract claim encompasses allegations that go beyond mere breach of the noncompete provisions, including claims that Ingram breached the Agreement's confidentiality provisions as well as its prohibitions against the use of trade secrets and other company "property" defined to include "manuscripts, drawings, prints, manuals, diagrams, letters, notes, notebooks, reports, models, graphs, disks, [and] tapes . . . ." Am. Compl. ¶¶ 102-03 (incorporating by reference, as Exhibit A, which is the Agreement).

Based on the facts adduced in the record to date, including the testimony heard during the hearing on the Motion for Preliminary Injunction, Virtual Cloud's breach of contract claim against Ingram is not amenable to resolution under the standards set forth in Rule 56(c).

**4.** *Defendants' Motion for Summary Judgment on Virtual Cloud's Claim for Lost Profits* (Doc. # 77, filed 8/18/03).

Finally, CH2M Hill and Ingram challenge Virtual Cloud's entitlement to "lost profits" as an element of its damages in this case. Defendants contend Virtual Cloud's alleged lost profits are too speculative and remote to be compensable.

This argument illustrates the fundamental difference between the parties' views of this case. According to CH2M Hill, Virtual Cloud was never a profitable business,

CH2M Hill carried it as the parties discussed a joint venture to supply CH2M Hill clients with technology developed by Ingram, but the company failed on its own merits along with many other companies during after the tech bubble burst in 2001.  Only once it became clear Virtual Cloud was no longer a viable concern did Ingram come to CH2M Hill, bringing his technology which CH2M Hill maintains it used fair and square.  According to CH2M Hill, Virtual Cloud is using this lawsuit to recover "lost" profits it never would have earned on its own.  Virtual Cloud, by contrast, contends it was induced to entrust its breakthrough computer network monitoring technology to CH2M Hill only as long as it would take CH2M Hill and Ingram to effectuate their plan to appropriate it and leave Virtual Cloud to wither as a going concern without its principal asset.

The parties' respective positions on the "lost profits" issue could not diverge more and I find it both impossible and unwise to resolve it on a motion for summary judgment.  I suspect aspects of this argument will reappear as in limine motions or so-called *Daubert*[7] motions challenging the admissibility of expert witness testimony.   For our purposes at this stage of the proceedings, the Motion for Summary Judgment is denied.

Based on the foregoing, my rulings on the pending Motions for judgment in this case are as follows:

---

[7] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (discussing trial courts' pretrial "gatekeeping" obligation to assess reliability and relevance of expert opinions).

1. Defendants' Motion for Judgment as a Matter of Law on Claims Preempted by the Uniform Trade Secrets Act (Doc. 75) is GRANTED in part and DENIED in part. Plaintiff's claims for unfair competition, conversion and theft are deemed preempted under Colo. Rev. Stat. § 7-74-108. Plaintiff's civil conspiracy, breach of fiduciary duty (CH2M Hill) and unjust enrichment claims are not preempted.

2. With respect to Defendants' Motion for Summary Judgment on Virtual Cloud's Claims for Violation of the Colorado Consumer Protection Act and Intentional Interference with Prospective Business Advantage (Doc. 77) the Motion is deemed CONFESSED with respect to the CCPA claim and is DENIED as to the intentional interference claim.

3. The Motions for Summary Judgment on the Claim for Breach of Contract (Doc. 79) and on Virtual Cloud's Claim for Lost Profits (Doc. 81) are both DENIED.

The parties shall file a Joint Status Report within five days of Magistrate Judge Boland's ruling on the pending Motion to Compel and to Reopen Discovery stating whether and when this case may be ready for pretrial conference.

Dated February 21, 2006.    **s/John L. Kane**
                            SENIOR U.S. DISTRICT JUDGE